IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-135-FL

| | |
|---|---|
| SHARON JESSUP, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>CAROLYN W. COLVIN, )<br>ACTING COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Sharon Jessup ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-23] be denied, Defendant's Motion for Judgment on the Pleadings [DE-27] be granted, and the agency's final decision be upheld.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on July 6, 2009, alleging disability beginning August 20, 2004. (Tr. 45, 195.) The application was denied

initially and upon reconsideration, and a request for hearing was filed. (Tr. 45-46, 79.) On December 7, 2011, a hearing was held before Administrative Law Judge Augustus Martin ("ALJ"), who issued an unfavorable ruling on January 9, 2012. (Tr. 17, 61.) On April 29, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 2-4.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of her past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment from August 20, 2004 through her date last insured of December 31, 2007. (Tr. 52.) Next, the ALJ determined Plaintiff had the following severe impairments: "residuals of cerebrospinal fluid (CSF) leak and headaches." The ALJ additionally found Plaintiff to have the following non-severe impairments: oligomenorrhea, probable fibrocystic breast disorder, neuropathy, Raynaud's syndrome, and arthropathy. (*Id*.) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 54.)

3

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to perform sedentary work with the following restrictions:

> [T]he claimant was able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally, except she was limited to occasionally performing postural movements. Additionally, the claimant had to avoid all exposure to hazards and avoid even moderate exposure to respiratory irritants.

(Tr. 55.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 56.) At step four, the ALJ concluded Plaintiff was not capable of performing the requirements of her past relevant work. (Tr. 59.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies. (Tr. 60-61.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on three grounds. Plaintiff first contends that the ALJ erred by failing to define "postural limitations" as set forth in the RFC. Second, Plaintiff asserts that the ALJ erred in assessing Plaintiff's credibility. Third, Plaintiff argues that the ALJ erred in weighing a treating physician's opinion.

### A. Residual Functional Capacity

Plaintiff contends that the ALJ erred by failing to define "postural movements." Plaintiff maintains that due to an inaudible portion of the hypothetical, it is not clear whether the ALJ included other non-exertional limitations, such as limitations on reaching, fingering, and handling. Plaintiff states that in order to determine the limitations imposed in the hypothetical, one must compare it to the RFC. Plaintiff goes on to argue that the decision does not provide a basis for

4

limiting Plaintiff to "occasional postural movements" and that the term itself is unclear as to whether manipulative limitations are included therein. Plaintiff seems to be arguing that there is no basis for postural limitations, but significant basis for manipulative limitations. Further, Plaintiff reports that "[t]he opinion offers no guidance by way of the term 'postural' movements."

The purpose of a vocational expert's testimony is to assist the Commissioner in determining whether there is other work available in the economy that a claimant can perform. Such an opinion is relevant and helpful if it is "based upon a consideration of all other evidence in the record" and is "in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir.1998). The Commissioner may not rely upon a vocational expert's opinion where the hypothetical question posed does not "fit the facts" of the case. *See Swaim v. Califano,* 599 F.2d 1309, 1312 (4th Cir.1979). The ALJ must only include in his questioning those impairments which he found to be credible. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). There is no error where a portion of the hypothetical is inaudible, but when read alongside the RFC, the limitations included within the hypothetical presented to the VE become clear. *See Nelson v. Colvin*, No. 4:12-CV-97-FL, 2013 WL 4504269, at *10-11 (E.D.N.C. Aug. 22, 2013).

In this case, the ALJ imposed limitations on Plaintiff's postural movements. In the Social Security disability context, "postural movements" include "such activities as climbing ladders, ropes or scaffolds, balancing, kneeling, crouching, or crawling."SSR 96-9p, 1996 WL 374185, at * 7 (July 2, 1996); see also Tarpley v. Astrue, No. 5:08-CV-271-FL, 2009 WL 1649774, at *12 n.6 (E.D.N.C. June 1, 2009) (rejecting argument that "postural activities" is vague) Manipulative movements, on the other hand, involve the ability to perform gross or fine movements using the hands or fingers, such as fingering or handling objects. *See id*. at *7-8.

5

Comparing the ALJ's hypothetical to the RFC, it is evident that the ALJ imposed postural limitations and not manipulative limitations. The ALJ discussed Plaintiff's testimony in which she described her arthritis, the braces she wears on both arms, and her past restrictions on lifting and bending. (Tr. 55-56.) The ALJ also addressed Plaintiff's medical records, which discussed her cervical radiculopathy, cervical muscle spasms, and disc bulges in the cervical spine. (Tr. 58, 752.) The ALJ further analyzed the physical limitations evident from Plaintiff's diagnosis of debilitating arthritis. (Tr. 378.) The ALJ did not include any limitations for manipulative activities, specifically finding that Plaintiff's combined impairments "did not result in . . . an inability to perform fine and gross movements effectively." (Tr. 54.) The ALJ's findings with regard to postural and manipulative limitations are supported by both Plaintiff's testimony and the medical record, including her treating physician's February 2004 opinion that Plaintiff was capable of performing "light duty" or "office duty" work. (Tr. 528.)

### B. Plaintiff's credibility

Plaintiff further argues that the ALJ erred in assessing her credibility. In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594–95. Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (eff. July 2, 1996).

The ALJ must consider the following factors in addition to objective medical evidence when assessing the credibility of an individual's statements:

(1) Claimant's daily activities;

(2) The location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) The type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, received for relief of pain or other symptoms;

(6) Any measures used to relieve pain or other symptoms; and

(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3.

In the instant case, the ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff was not fully credible. (Tr. 56.) The ALJ explained his credibility determination, stating:

> Although the claimant alleged that she suffered from disabling symptoms beginning in August 2004, medical evidence of record reveals that she underwent insemination to become pregnant and carried her child to full-term, giving birth to a healthy daughter in August 2005. Thus [sic] suggests that her symptoms may not have been as severe as alleged during that period. The claimant's allegations of symptoms of disabling severity are inconsistent with her reports to treating physicians during the relevant period. Additionally, her testimony conflicts with her August 2009 report of activities of daily living, in which she admitted that she prepared simple meals, did the dishes, and shopped for necessities. Her testimony regarding an inability to concentrate is not entirely consistent with her August 2009 report that she was able to pay the bills and handle financial accounts. Although the inconsistent information provided by claimant may not be the result of a conscious intention to mislead, the inconsistencies suggest that the claimant's testimony regarding her symptoms during the relevant period may not be entirely reliable.

(Tr. 56-57.) Further, the ALJ extensively analyzed the medical record within his decision, as well as Plaintiff's testimony. Thus, the ALJ properly evaluated Plaintiff's credibility and, based on the

7

evidence of record, determined that Plaintiff's statements concerning her inability to work were not fully credible.

### C. Treating Physician

Plaintiff next asserts that the ALJ erred in weighing Dr. Anita L. Jackson's medical opinions. Dr. Jackson provided three letters stating her medical opinion on Plaintiff's ability to work. The first letter was dated February 10, 2004. This letter stated that Plaintiff "may have had a Cerebrospinal Fluid Leak," and additionally: "[Plaintiff] is okay for light duty. She should avoid dusty environments, driving due to headaches and dizziness, and should limit driving due to her current symptoms. I would strongly recommend office duty." (Tr. 528.) The second letter, dated February 1, 2005, was written during Plaintiff's pregnancy. The letter stated:

> Recently I have noticed deterioration in health to include increased nosebleeds and severe migraines accompanied by nausea and vomiting. She is also unable to take any of her medications due to her change in health status. Ms. Deaver-Jessup should not be given a new job position until after her full health status has stabilized.

(Tr. 529.)

The third letter was written four years later, on August 12, 2009. This letter was written after Plaintiff's DLI and pertains to medical procedures and records from before and after Plaintiff's DLI. In pertinent part, the August 2009 letter reads:

> This patient has a significant family history of cancer having lost her mother and sister last year. She herself had a left breast biopsy that was equivocal but now has axillary lymphedema which is quite concerning, especially when she has been bleeding (abnormal mennorhagia) for the last 3 months. She has also seen a rheumatologist, Dr. G. Melton who has diagnosed her with Raynaud's disease and with several forms of debilitating arthritis. She is unable to receive any of the prescribed medicine that was recommended. In addition, she was seen by Dr. David Allen, an Orthopedic surgeon who had recommended both knee and elbow surgery after medical clearance. Prior to receiving medical clearance she was found to have hypokalemia and hypotension causing her chest pain and potential cardiac arrhythmias.

> I have personally seen Ms. Jessup over the last 4-years after a debilitating injury to her nose and face. She has chronic headaches and with [sic] previous trismus from severe TMJ.
>
> We are exceedingly concerned about her discontinuity of care and we would support her reassignment into Medicaid so that her serious medical issues can be treated and addressed. It seems odd that she would only be allowed Medicaid during her pregnancy when she has so many chronic illnesses that are debilitating and life-threatening.

(Tr. 527.)

Generally, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.* Further, "remand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision." *Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. Sept. 29, 2005) (citing *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)).

Here, the ALJ assigned the medical opinion in each letter separate weight. The ALJ assigned the February 2004 letter significant weight, the February 2005 letter some weight, and the

August 2009 letter little weight. (Tr. 58-59.) Plaintiff argues that the ALJ erred by assigning "little weight" to the August 2009 letter. The ALJ stated his reasoning saying, "it was issued almost two years after the claimant's date last insured and offers little insight into the claimant's work-related abilities and limitations during the relevant period." (Tr. 59.) The ALJ's finding in this regard is supported by substantial evidence, as the letter seems to address Plaintiff's ability to work as of the date the letter was written. Overall the letter is not a backwards-looking document and does not detail whether Plaintiff was disabled before her DLI. *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 342-43 (4th Cir. 2012) (finding error where evidence produced after claimant's DLI tended to show claimant was disabled before his DLI). Moreover, even though the August 2009 letter contained a mix of information from both before and after Plaintiff's DLI, the ALJ still took the letter into consideration and addressed the pre-DLI doctor visits and diagnoses throughout the decision. Additionally, the ALJ included a limitation on postural movements in Plaintiff's RFC, thus addressing Plaintiff's arthritis and arthropathy. Thus, the ALJ appropriately considered the relevant medical opinions contained within Dr. Jackson's August 2009 letter.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-23] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-27] be GRANTED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon

grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 18th day of July 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge