IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-135-FL

| | |
|---|---|
| SHARON JESSUP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 23, 27). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and that the final decision by defendant be affirmed. Plaintiff timely filed an objection to the M&R, and defendant has responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge.

**BACKGROUND**

Plaintiff filed an application for period of disability and disability insurance benefits on July 6, 2009, alleging disability beginning August 20, 2004. The application was denied initially and upon reconsideration. A hearing was held on December 7, 2011, before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled during the relevant time period in a decision dated January 9, 2012. The appeals council denied plaintiff's request for review on April 29, 2013, and plaintiff filed the instant action on June 27, 2013.

**DISCUSSION**

A.      Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718

F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from August 20, 2004, the date of alleged disability, to the date she was last insured on December 31, 2007.[1] At step two, the ALJ found that plaintiff had the following severe impairments: residuals of cerebrospinal fluid (CSF) leaks and headaches. The ALJ also found plaintiff had non-severe impairments including fibrocystic breast disorder, oligomenorrhea, neuropathy, Raynaud's syndrome, and arthropathy. However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations.

---

[1] The ALJ found that plaintiff's earnings record showed that she had "acquired sufficient quarters of coverage to remain insured through December 31, 2007," and therefore that plaintiff was required to establish disability on or before that date to receive disability and disability insurance benefits. (R. 50).

3

Prior to proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following restrictions:

> [T]he claimant was able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally, except she was limited to occasionally performing postural movements. Additionally, the claimant had to avoid all exposure to hazards and avoid even moderate exposure to respiratory irritants.

(R. 55). In making this assessment, the ALJ found plaintiff's statements about her limitations not fully credible.

At step four, the ALJ concluded plaintiff was not capable of performing her past relevant work. At step five, upon considering testimony of a vocational expert ("VE"), the ALJ determined that there were jobs that existed in significant numbers in the national economy that plaintiff is capable of performing.

B.  Analysis

Plaintiff objects to the M&R on the grounds that the ALJ's decision did not follow the regulations for making credibility determinations, that the ALJ failed to find plaintiff was restricted in using her hands and arms, and that the ALJ did not properly consider an opinion from her treating physician. The court will address each objection in turn.

    1.    Credibility Evaluation

In assessing credibility, the ALJ must follow a two-step process: (1) the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms, and (2) the ALJ must evaluate the credibility of the statements regarding those

4

symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). The evaluation must account for "all the available evidence," including the claimant's medical history, medical signs, laboratory findings, daily activities, and medical treatment." Id. at 595. The decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

The ALJ gave a number of specific reasons for finding plaintiff's statements concerning her symptoms not fully credible, including that plaintiff (1) underwent insemination to become pregnant and carried her child to full-term during the disability period, (2) plaintiff's allegations of symptoms were inconsistent with reports to treating physicians during the relevant period, (3) plaintiff's August 2009 functional report described daily living activities that contradicted her testimony at hearing, and (4) plaintiff received treatment, including medications, during the relevant period and her symptoms were generally well-controlled during that time. (R. 57).

Plaintiff argues that the ALJ gave an insufficient rationale for discounting her credibility, arguing that her ability to conceive, carry and deliver a child was not inconsistent with a disability that prevented her from working. However, as detailed above, this was only one of a number of reasons why the ALJ ultimately determined plaintiff was not fully credible. An ALJ is under an obligation to consider "all the available evidence," Craig, 76 F.3d at 595, and the ability to maintain a successful pregnancy may be considered as part of that evidence. E.g., Bouchard v. Barnhart, 38 F. App'x 332, 336 (7th Cir. 2002) (holding that ALJ had adequate support for his decision by noting

5

"significant events" in claimant's life, including pregnancy). The ALJ thus reasonably considered this event as a factor weighing against plaintiff's allegations of disability.

Second, plaintiff argues that she reported severe symptoms to her hands, and was seen by three specialists, Dr. Carol M. Wadon ("Wadon"), Dr. Maurice R. Roulhac ("Roulhac"), and Dr. Gwenesta B. Melton ("Melton"), who diagnosed medical conditions supporting these symptoms. Plaintiff appears to argue that the ALJ failed to properly consider these diagnoses.

When making an RFC assessment, an ALJ "must always consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In addition, an ALJ has a duty to explain the decision so as to enable meaningful judicial review. "While the [Commissioner] is empowered . . . to resolve evidentiary conflicts, the [Commissioner], through the ALJ, is required to explicitly indicate 'the weight given to all relevant evidence.'" Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987) (quoting Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984)). In particular, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. A denial of benefits is not supported by substantial evidence if the ALJ "has [not] analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits." Gordon, 725 F.2d at 236. "[R]emand is appropriate where an ALJ fails to discuss relevant evidence that weighs against [her] decision." Ivey v. Barnhart, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (citing Murphy, 810 F.2d at 438).

The ALJ did consider and address the evidence from all three of these physicians. He noted that Wadon did not prescribe any recommended ongoing treatment or restrictions. (R. 53). Roulhac

prescribed "conservative therapy" in the form of medication. (R. 53, 367). Though noting plaintiff had pain in her hands and wrists, Melton found these unremarkable upon examination. (R. 54, 394). The ALJ did not ignore or completely discount these medical opinions, but rather that they showed only a "minimal effect on [plaintiff's] ability to perform basic work activities." (R. 54). Substantial evidence supported that evaluation.

Next, plaintiff argues that her testimony at the hearing was not in conflict with her function report from August 2009 regarding her daily living activities, which the ALJ relied on in part to discredit her testimony. The ALJ noted that plaintiff reported that she "prepared simple meals, did the dishes, and shopped for necessities." (R. 56-57, 246). Plaintiff notes qualifications regarding these statements in the report, such as that plaintiff only reported that she made "simple meals like sandwiches" while her "husband and son" made larger meals; that she only reported doing dishes "when I am able;" and that she shopped for "[g]roceries, clothes, household needs when I can." (R. 246-47). Yet the ALJ's description is not necessarily inconsistent with the August 2009 function report. See Agee v. Barnhart, No. 6:04-cv-32, 2005 WL 878098, at *8 (W.D. Va. April 14, 2005) (holding that, although ALJ did not take note that plaintiff had qualified questionnaire responses by adding phrases such as "when I can" or "as I am able," the "totality of plaintiff's responses" were consistent with the ALJ's decision that plaintiff's daily activities were inconsistent with her claim of total disability.).

Plaintiff also gives explanations for why her responses at the testimony were consistent with the function report. For instance, when the ALJ asked "Did you prepare any meals during that time [of alleged disability]?," plaintiff answered "No sir. My husband cooks." (R. 29). Plaintiff argues that this answer was consistent with her 2009 function report because in the function report she had

only stated that she made "simple meals[2] such as sandwiches" and that her "husband and son help with larger meals." (R. 246). Also at hearing, when asked whether she shopped for food or clothing, plaintiff testified that "I have been a couple times for clothes, but my husband does the grocery shopping." (R. 30). In the 2009 function report, plaintiff stated that she shopped for "[g]roceries, clothes, household needs when I can." (R. 247). Plaintiff further stated that she shopped "weekly." (Id.). Plaintiff argues that this statement was "not entirely consistent, [but] it is hardly inconsistent" with her hearing testimony. (Pl's Mem. 16). However, the discrepancies in these two sets of statements are significant enough to constitute substantial evidence supporting the ALJ's finding that the 2009 function report conflicted with her testimony. Furthermore, the ALJ also noted an inconsistency between plaintiff's testimony concerning her inability to concentrate, and her function report stating that she handled the bills and financial accounts for her family. (R. 57, 247). This further supported his finding that plaintiff's testimony was inconsistent with the 2009 function report.

As another ground for objection, plaintiff argues that her "inability or ability to concentrate has little bearing on her ability to use her hands to reach, handle, and finger." (Pl.'s Obj. 3). Plaintiff appears to be challenging the ALJ's use of the last inconsistency noted above, regarding plaintiff's ability to concentrate *vis-à-vis* her function report regarding how she handled bills and financial accounts. The ALJ did not consider this evidence with respect to whether plaintiff could use her hands, but whether she could concentrate. The discrepancy was substantial evidence supporting his evaluation of plaintiff's credibility.

---

[2] Plaintiff quotes the August 2009 function report to state that plaintiff made "simple things like sandwiches." (Pl's Mem. 15) (DE 24) (emphasis added). However, the function report clearly refers to these dishes as "meals."

8

### 2. Limitations in Manipulation

Plaintiff argues that the evidence supported a finding of at least some limitation in plaintiff's ability to manipulate things with her hands, reach, handle and finger. Plaintiff specifically cites to diagnoses of Raynaud's syndrom, vasospastic disorder, and ulnar neuropathy and argues that these required a finding regarding how plaintiff was limited.

Under 20 C.F.R. § 404.1545(e), when determining a claimant's RFC, the regulation requires the ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe...." See also, SSR 96-8p, 1996 WL 374184, at *5 (stating that "in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' "). Here, the ALJ considered plaintiff's diagnoses, and determined that they did not create impairments that met or equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 54). In the course of making this determination, the ALJ found that plaintiff's impairments "did not result in an inability to . . . perforrm fine and gross movements effectively." (Id.). In addition, the ALJ incorporated the impact from such considerations in the RFC, stating that "while the combination of the claimant's impairments may have affected her ability to perform work-related activities, it did not impose greater limitations than those inherent in the residual functional capacity." (Id.). There was substantial evidence to support these conclusions, as physical examinations showing no motor weakness, no dermatomal sensory loss, unremarkable X-rays of hands and wrists, and upper extremity muscle strength of 5/5. (R. 54). The ALJ thus did not commit error.

9

Case 7:13-cv-00135-FL   Document 33   Filed 09/30/14   Page 9 of 12

### 3. Evaluation of Treating Physician Opinion

Finally, plaintiff argues that the ALJ "ignore[d] or impeach[ed] the opinion of claimant's treating physician who had a longitudinal view of claimant's period of alleged disability, and who made the referrals to the specialists who diagnosed claimant's neurological impairments." (Obj. 4). This appears to be a reference to the ALJ's decision to assign "little weight" to the August 2009 opinion of plaintiff's treating physician, Jackson. As noted, when making an RFC assessment, an ALJ "must always consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *7. In addition, an ALJ generally must give more weight to the opinion of a treating physician "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Johnson, 434 F.3d at 654. A "treating source" means an "acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.902; see Meyer v. Astrue, 662 F.3d 700, 705 n. 1 (4th Cir. 2011).

The duty to explain may extend to opinions given after the plaintiff's date last insured. "To establish eligibility for Social Security disability benefits, a claimant must show that he became disabled before his DLI [date last insured]." Bird v. Comm'r of Soc. Sec., 699 F.3d 337, 340 (4th Cir. 2012). "Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." Id. For example, "post-DLI medical evidence generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition." Id. at 341.

Here, the ALJ thoroughly discussed Jackson's 2009 opinion, ultimately explaining that it merited "little weight" because "it was issued almost two years after claimant's date last insured and offers little insight into the claimant's work-related abilities and limitations during the relevant period." (R. 59). Thus, the ALJ did not ignore the opinion, but considered it and offered an explanation for why he would afford the opinion "little weight" beyond merely the date of the opinion – namely, by stating that the opinion "offers little insight into the claimant's work-related abilities and limitations during the relevant period." (R. 59). Jackson's 2009 opinion is not clear as to the timeframe that plaintiff suffered from the medical conditions she describes. Other parts of the ALJ's opinion address why the ALJ found Jackson's opinion did not have record support during the relevant timeframe, including objective test results, and Jackson's own earlier opinions. Thus, there was substantial evidence to support the ALJ's decision to assign this opinion "little weight" for the relevant time period.

Plaintiff argues that the ALJ's opinion departs from regulations providing that medical opinions will be considered according to (1) the examining relationship, (2) the treatment relationship, (3) supportability through relevant evidence, (4) consistency with the record, (5) specialization, and (6) "other factors." 20 C.F.R. § 404.1527(c). The ALJ's consideration of the date and scope of the opinion properly falls under the "other factors" that may affect his evaluation.

In sum, where the findings of the ALJ are "supported by substantial evidence and were reached through application of the correct legal standard," Craig, 76 F.3d at 589, this court must uphold the decision of the Commissioner to deny benefits.

11

## CONCLUSION

Based on the foregoing, upon de novo review of those portions of the M&R to which specific objections have been filed, and upon considered review of the record and those portions of the M&R to which no such objection has been made, the court ADOPTS the recommendation of the magistrate judge, DENIES plaintiff's motion for judgment on the pleadings (DE 23), and GRANTS defendant's motion. The clerk is directed to close this case.

SO ORDERED, this the 30th day of September, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge